# CHARLESTON.

YEAGER *et al. v.* TOWN OF FAIRMONT.

(DENT, JUDGE, *absent.*)

| 43 | 259 |
| 43 | 545 |
| 43 | 259 |
| f46 | 443 |

Submitted February 1, 1897—Decided April 3, 1897.

1. MUNICIPAL CORPORATIONS—*Change of Grade—Surface Water—Damages.*

    Where a town, in grading its streets, raises the grade so as to cast the surface water on an adjoining lot occupied by a storeroom, if the grade of such street is not raised in violation of the Constitution, or some statute law, or the charter of the town, no action can be maintained by the adjoining lot owner for damages sustained by reason of casting said surface water on said adjoining lot, unless the surface water is collected in a body and cast upon said lot. (p. 264.)

2. DAMAGES TO REAL ESTATE—*Surface Water—Tenant for Life—Remainder Man—Joinder of Parties.*

    Where a lot injured by raising the grade of a street, and casting surface water thereon, as above stated, is held by M. E. as a tenant for life, and G. G. is entitled to the remainder in fee, and said M. E. and G. G. are engaged in the mercantile business as partners in a storeroom upon said lot, which storeroom is permanently injured by said surface water, said M. E. and G. G. cannot recover in the same action for damage done to the life estate, the remainder, and the joint mercantile business by raising the grade of said street and causing the surface water to flow on said lot. (p. 264.)

3. DAMAGES TO REAL ESTATE—*Tenant for Life—Remainder-Man—Separate Actions.*

Where a tort upon realty affects both the estate of a tenant for life and that of a remainder-man, each may sue separately, and, as the damages are apportionable, each recovers damages to cover the injury done to his estate. Neither can recover damages covering the entire injury to both estates. (p. 265.)

Error to Circuit Court, Marion county.

Action by George Yeager and M. E. Yeager against the town of Fairmont. Judgment for plaintiffs, and defendant brings error.

*Reversed.*

W. S. HAYMOND and W. S. MEREDITH, for plaintiffs in error.

DOVENER & CONIFF, for defendants in error.

ENGLISH, PRESIDENT:

This was an action of trespass on the case brought by George G. Yeager and M. E. Yeager against the town of Fairmont, in the Circuit Court of Marion county, to recover damages alleged to have been occasioned by a change of grade in the streets of said town adjoining the property of the plaintiffs. A demurrer to the plaintiffs' declaration was interposed by the defendant, and upon consideration was overruled by the court, and thereupon the defendant plead not guilty, and issue was thereon joined. On the 12th day of July, 1895, the case was submitted to a jury, which resulted in a verdict for the plaintiffs for the sum of two thousand five hundred and fifty dollars; and thereupon the defendant moved the court to set aside the said verdict, and grant it a new trial, upon the ground that said verdict was contrary to the law and the evidence, and because of the improper instruction given by the court to the jury at the instance of the plaintiffs, and because of the variance between the allegations of the declaration and the proof, and because the damages assessed by the jury were excessive; which motion was overruled by the court, and the defendant excepted to said ruling, and asked the court to certify the evidence. On the 18th of July, 1895, judgment was rendered upon the said verdict

and the defendant applied for and obtained this writ of error.

The first error assigned and relied upon by the defendant is to the action of the court in overruling defendant's demurrer to plaintiff's declaration. Counsel for the plaintiff in error insist that the court erred in overruling said demurrer for the following reasons:

The declaration alleges that the plaintiff George G. Yeager was the owner in fee simple of the real estate claimed to have been injured, and that the plaintiff M. E. Yeager was the owner and possessor of a life estate in the same; that this is impossible. A fee simple being the highest estate known to the law, it is the entire and absolute property, and it is impossible for one plaintiff to own the fee simple while the other owns a life estate in the same property at one and the same time; citing Tied. Real Prop. § 36, for the definition of "fee simple," where it is said: "'Fee simple' is a freehold estate of inheritance, free from conditions and of indefinite duration. It is the highest estate known to the law, and is absolute, so far as it is possible for one to possess an absolute right of property in lands."

It is also contended that allegations of special title must be proved as laid, citing 1 Chit. Pl. 379, 380, 384, and insisting that it is absurd to contend that the special title as laid in the declaration can be proved.

By referring to the declaration, it will be seen that it is alleged that, at the time of the committing by the defendant of the grievances hereinafter mentioned, the said plaintiff, George G. Yeager, was and is the owner in fee simple, and the said M. Yeager was the owner and possessor of a life estate in a certain parcel or lot of ground lying within the corporate limits of the said town of Fairmont, Marion county, W. Va., which is described in the declaration, and which said George G. Yeager and M. E. Yeager, as joint plaintiffs, complained was damaged by raising the grade of the street adjoining thereto in said town in the manner set forth in the declaration. The contention of the defendant is that this was a misjoinder of plaintiffs, and the first question for consideration is whether this question can be raised by demurrer, or whether it should have been properly raised by a plea in abatement. The

character of the interests owned by the respective parties is averred on the face of the declaration. When such is the case, we find the law, as to the manner in which the question may be raised, stated in 1 Chit. Pl. p. 75, as follows: "If, however, too many persons be made co-plaintiffs, the objection, if it appear on the record, may be taken advantage of either by demurrer, in arrest of judgment, or by writ of error." The same author, on page 73 of same volume, says: "When two or more persons are jointly entitled to have a joint legal interest in the property affected, they must in general join in the action, or the defendant may plead in abatement, and, though the interest be several, yet if the wrong complained of cause an entire joint damage, the parties may join or sever in the action; but as the courts will not in one suit take cognizance of distinct and separate claims of different persons, where the damage as well as the interest is several, each party injured must in that case sue separately." See 17 Am. & Eng. Enc. Law, p. 588, where, in speaking of parties to actions, it is said: "All the plaintiffs must have an interest in the subject-matter of the action and in obtaining the relief demanded, and therefore two or more plaintiffs, having distinct causes of action, may not be joined." Hogg, in his valuable work on Pleading and Forms (page 30, § 43), says, under the heading of "Distinct and Separate claims of Different Persons in One Suit": "As to joinder of plaintiffs in actions of tort, it is a general rule that, if they have a joint interest in the property affected, they must join in the action or the defendant may plead the nonjoinder in abatement. But a joint tenant or tenant in common need not join his co-tenant in an action to recover the common real property in unlawful entry and detainer. Each has a right to the whole as against strangers and wrongdoers. But if the action concern personal property, they must join. If parties have several and distinct interests, they might sue severally. Courts will not take cognizance in one suit of distinct and separate claims of different persons where the damage, as well as the interest, is several, and hence each party injured must sue separately." Upon this question see, also, 1 Bart. Law Prac. § 80, where it is said: "The failure to make the proper contracting persons parties defendant to the suit

can only be taken advantage of by plea in abatement, save where it appears on the face of the declaration; but, if there be a misjoinder or nonjoinder of plaintiffs, the objection may be made upon the trial and upon general issue. If the omission appear in the pleadings, advantage of it may be taken by demurrer, motion in arrest of judgment, or writ of error; but, if it only be disclosed by the evidence, the plaintiff will be nonsuited." We find the law stated in 1 Add. Torts, § 407, under the heading of "Division of Rights—Tenant and Reversioner": "The actual occupier of real property is always entitled to maintain an action for unjustifiable trespasses thereon, but the owner who has parted with the possession in favor of a tenant or lessee can only maintain an action if an injury is done to his reversionary estate. If a house or land is occupied merely by the servant of the owner, the occupation of the servant is the occupation of the owner, and the latter, being then the occupier as well as the owner, may sue for any temporary trespass or injury rendering his occupation less profitable or commodious; but where the land has been demised to a lessee, who has entered thereon and is clothed with the possessory interest, the lessee, and not the landlord, is the proper party to sue for a trespass on the property, unless the wrongful act complained of imports a damage to the reversionary estate. Where the injury is of a permanent nature, and deteriorates the marketable value of the property, so that, if the landlord or reversioner were to sell it, it would fetch less money in the market, there is a damage to the reversionary estate, in respect of which the reversioner may maintain an action."

Now, when we look to the declaration, it is apparent the gravamen of this action consists in the alleged injury to the storehouse therein described. It is alleged that the plaintiff George G. Yeager was, and still is, the owner in fee simple, and the plaintiff M. E. Yeager was the owner and possessor of a life estate, in the lot or parcel of ground therein described upon which said storehouse is situated, and that the damage complained of was occasioned by raising the grade of the streets adjoining said lot twenty-eight inches higher than the floor of said storehouse, thereby obstructing the free ingress and egress of said plaintiffs and their customers and patrons in their said business to and

from said storehouse, and thereby causing the water and snow falling upon and accumulating upon said adjoining streets to drain and accumulate and stand in front of and around said plaintiffs' said storehouse, and to fall into and upon the floor of the plaintiffs' said store, and into the cellar of the same; that by reason of said change of grade, and the drainage of water upon the plaintiffs' said lot, the foundations and wall of said house became dampened and weakened so as to injure permanently the same, and to render said house, as well as said lot, unhealthy and unfit for use for the purposes and business mentioned in the declaration.

It will be perceived that this declaration claims damages for three different and distinct causes of action, to wit: Injury to the life estate, of which M. E. Yeager is alleged to have been the owner and possessor; the injury to the fee simple, by which is evidently meant the remainder or reversion to which George G. Yeager was entitled; and the injury to the joint mercantile business in which said plaintiffs were engaged in said storehouse. If it was proper to combine all three of these causes of action, it is difficult to determine in what manner the damages recovered should be apportioned among them. If the suit was in equity, the value of the life estate might be ascertained, and yet it would be difficult to say what portion of the damages should be awarded the life tenant and what portion to the remainder-man, and equally difficult to ascertain what portion the plaintiffs were entitled to jointly by reason of the injury to their mercantile business. A case involving several questions similar to the one under consideration was recently decided by this Court, and will be found in 42 W. Va. 300 (26 S. E. 266). I refer to the case of *Jordan* v. *City of Benwood* (decided November 18, 1896), in which it was held "that a city is not liable for damages to a lot owner because change of grade of a street prevents surface water of a lot from flowing off. It is not different even if the surface water is, by reason of such change of grade, increased in quantity upon the lot, if not cast in a mass or body upon the premises. Nor is a city liable for mere surface water flowing from the street upon an adjoining lot." And it was further held in said case that,

"where a tort upon realty affects both the estate of a tenant and that of a reversioner or remainder-man, each may sue separately, and, as the damages are apportionable, each recovers damages to cover the injury done to his estate. Neither can recover damages covering the entire injury to both estates." In that case a party entitled to the reversion or remainder was plaintiff in the suit, while the life tenant was in possession, and BRANNON, JUDGE, in delivering the opinion of the Court, said: "Another question is whether the verdict should be set aside because it appears that the plaintiff recovered as for the entire damage to the premises instead of only for damage to her remainder. The declaration counted only on damage to the reversion, and we do not know how the jury reached the sum it did reach. We do not know whether it deducted for the life estate of Mrs. Clark, then in possession; but, as there is no evidence of any discrimination, it may be said to cover the entire estate for life and in remainder. If there be a tenant for years or life in actual possession, he can sue for any trespass affecting his immediate residential interest, and the reversioner or remainder-man, if the act does a permanent injury to the inheritance, may sue as to that. * * * The particular tenant recovers for damage only to present enjoyment, covering his entire term if it affects the entire term, and the remainder-man or reversioner only for damage to the remainder or reversion."

Returning again to the question of the liability of the corporation by reason of raising the grade of the streets, we find that Elliott, Roads & S. p. 336, says: "The general rule is well established that a municipal corporation is not liable for consequential damages necessarily caused in grading a street, unless the corporation is made liable by the constitution or by some provision in its charter or of the statutes of the state." On this same question, 2 Dill. Mun. Corp. § 989, in speaking of the change of grade in streets, says: "In connection with the principle just mentioned, that there is no implied or common-law liability for doing with proper care an act which is either directed or authorized by a valid statute, may be noticed the power of municipal corporations to grade and to change established the grade or level of their streets, though the

exercise of the power may be injurious to the adjoining property owners." And in section 990 the same author says: "Accordingly the courts by numerous decisions, in most of the states, have settled the doctrine that municipal corporations acting under authority conferred by the legislature to make and repair, or to grade, level and improve, streets, if they keep within the limits of the streets, and do not trespass on or invade private property, and exercise reasonable care and skill in the performance of the work resolved upon, are not answerable to the adjoining owner whose lands are not actually taken, trespassed upon, or invaded for consequential damages to his premises, unless there is a provision in the constitution of the state, in the charter of the corporation, or in some statute creating the liability. There is no such implied or common-law liability, even though in grading and leveling the street a portion of the adjoining lot, in consequence of the removal of its natural support, falls into the highway." "And the same principle applies, and the like freedom from implied liability exists, if the street be embanked or raised in reducing it to the grade line, so as to cut off or render difficult the access to the adjacent property. And this is so although the grade of the street has been before established and the adjoining property owner had erected buildings or made improvements with reference to such grade." This states correctly the common-law rule, but our Constitution provides that private property shall shall not be taken or damaged for public use without just compensation. The same author, in section 1043, says: "If, in consequence of filling streets and cross streets to the established grade line, water is collected in ponds or pools upon the adjoining lots, which are thus brought below the level of the streets, the corporation is not liable for damages thereby occasioned,"—citing numerous authorities in support of the proposition. In the case at bar it is apparent that there are three distinct causes of action asserted in the declaration: First, the claim for damage to the remainder-man or reversioner; second, the claim for damages resulting from injury to the life estate; and, third, the claim for damage inflicted upon the joint mercantile business of the plaintiffs by the action of the defendant in raising the grade of its streets. So far as the damage complained of

results from casting surplus water on this lot which adjoined the street by reason of raising the grade of the street, we have seen that no action accrues to the plaintiffs if such grading had not been done in violation of the charter of said town, the Constitution of the State, or some statute law; neither does any action accrue to the plaintiffs jointly in this suit from the fact that raising the grade makes ingress and egress to and from said storehouse difficult. For these reasons my conclusion is that the circuit court erred in overruling the defendant's demurrer to the plaintiffs' declaration. The judgment complained of is therefore reversed, the verdict set aside and, this Court proceeding to render such judgment as should have been rendered, the demurrer is sustained, and the plaintiffs' suit dismissed, with costs.

*Reversed.*